

EOD
05/25/2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| DONALD LEE CARDWELL, § | Case No. 09-43121 |
| § | Chapter 7 |
| Debtor. § | |

## MEMORANDUM OPINION

Bill Gurley and Stanley Wright seek to vacate an April 12, 2011 order authorizing the sale of certain real property to North Ponderosa, LLC pursuant to Bankruptcy Rule of Procedure 9024 and Federal Rule of Civil Procedure 60(d)(3). David McKinnon, North Ponderosa, and Barbara Marshall, LP (collectively, the "McKinnon Parties"), oppose the motion to vacate. This matter is before the Court on competing motions for summary judgment. The parties filed briefs in support of their respective positions, and the Court conducted a hearing on the motions on January 31, 2017.

## STANDARD OF REVIEW

The competing motions for summary judgment in this contested matter were each brought pursuant to Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). To the extent facts are undisputed, a court may resolve a case as a matter of law. *Celotex Corp.,* 477 U.S. at 323; *Blackwell v. Barton,* 34 F.3d 298, 301 (5th Cir. 1994).

In this case, the parties have essentially stipulated that there is no factual dispute in need of resolution, and they have each presented opposing motions for summary judgment based upon application of appropriate law. For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995) ("A federal court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly."). The record of this case, the summary judgment motions, and the responses in opposition to summary judgment set forth the following body of uncontested facts.

## BACKGROUND

1. Bill Gurley and Donald Cardwell were business associates for many years. However, on March 30, 2006, Gurley and 121 Investments, a limited liability company, equally owned by Cardwell and Gurley, filed their original petition in the District Court for the 134th Judicial District of Dallas County, Texas, against Cardwell for breach of fiduciary duty. Gurley alleged that Cardwell made a series of misrepresentations to him in the course of conducting business on behalf of 121 Investments. Following a two-day bench trial, the state court entered judgment against Cardwell in the amount of $370,830.84 plus post-judgment interest.

2. On October 2, 2009, Cardwell filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code. This Court appointed Christopher Moser to serve as the chapter 7 trustee for Cardwell's bankruptcy case.

3. Cardwell timely filed bankruptcy schedules and a statement of his financial affairs. The chapter 7 trustee and Cardwell's ex-wife objected to Cardwell's claimed exemptions. In response, Cardwell amended his bankruptcy schedules and statement of financial affairs several times.

4. In his amended schedules filed on July 26, 2010 and August 8, 2010, Cardwell disclosed that he was living on 118 acres in Melissa, Texas. However, he stated that only 24 of those acres, which included his residence, comprised his exempt homestead. He stated that the remaining 94 acres were encumbered by a $600,000 lien in favor of "Barbara Marshall," and he represented that he had no equity in the non-exempt 94 acres.

5. On January 19, 2010, Barbara Marshall, LP, filed a proof of claim for $600,000. The note and deed of trust attached to the claim were dated October 22, 2008 (within one year of the petition date).

6. The chapter 7 trustee later testified in state court that something did not "smell right" about Barbara Marshall, LP's claim. The chapter 7 trustee's counsel reviewed the documents attached to the claim and examined Mrs. Marshall pursuant to Bankruptcy Rule 2004. Mrs. Marshall's financial advisor, David McKinnon, attended the examination. The chapter 7 trustee also deposed Cardwell and visited the 94 acres in Melissa, Texas, with an appraiser.

7. Meanwhile, Gurley had objected to Cardwell's discharge, asserting that the judgment he obtained against Cardwell in state court should be exempt from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). Gurley filed a motion for summary judgment asserting that Cardwell was collaterally estopped from re-

litigating the findings of facts entered in connection with the underlying state court judgment. Gurley argued that given the state court's findings, there were no material issues of fact, entitling him to judgment as a matter of law.

8. The bankruptcy court granted summary judgment in favor of Gurley on November 3, 2010. The decision was affirmed on appeal. *See Cardwell v. Gurley*, 2011 WL 6338813, at *1 (E.D. Tex. Dec. 19, 2011), *aff'd sub nom. In re Cardwell*, 487 F. App'x 183 (5th Cir. 2012) (per curium).

9. At some point, McKinnon formed North Ponderosa, LLC. While Cardwell's appeal of the non-dischargeability judgment was pending, North Ponderosa offered to buy the 94 acres in Melissa, Texas, from Cardwell's bankruptcy estate. The chapter 7 trustee was aware that McKinnon was associated with North Ponderosa.

10. On February 17, 2011, the chapter 7 trustee filed a motion to sell the 94 acres to North Ponderosa for $25,000 plus the assumption of the $600,000 mortgage on the property. No one objected to the motion. The Court entered an order approving the chapter 7 trustee's motion to sell the 94 acres to North Ponderosa on April 12, 2011.

11. After the Court entered the order approving the sale of the Melissa property to North Ponderosa, North Ponderosa leased the entire 94 acres to Cardwell for the nominal amount of $10 per year.

12. This Court closed the bankruptcy case on October 25, 2013.

13. After the bankruptcy case closed, Gurley commenced post-judgment collection efforts in state court. On December 27, 2013, the state court appointed Stanley Wright as receiver for Cardwell's assets.

14. The facts that Gurley and Wright discovered during post-judgment discovery led them to assert a fraudulent transfer claim, among other claims, against Cardwell, McKinnon, North Ponderosa, and Barbara Marshall, LP, with respect to the sale of the 94 acres to North Ponderosa. The McKinnon Parties contested the claim. The McKinnon Parties argued, among other things, that the sale could not be a fraudulent transfer because it was authorized by this Court.

15. This Court granted a motion to reopen Cardwell's bankruptcy case to evaluate whether the bankruptcy estate had any interest in the fraudulent transfer claim. On December 17, 2014, this Court entered an order granting Gurley and Wright relief from the bankruptcy stay to pursue their fraudulent transfer claim against Cardwell and the McKinnon Parties. The Court's order required the proceeds of any recovery to be deposited with this Court pending further order.

16. On May 28, 2015, this Court once again closed Cardwell's bankruptcy case.

17. In October 2015, the state court conducted a bench trial of the issues and claims in the fraudulent transfer suit. The chapter 7 trustee was one of the witnesses at the trial. On December 2, 2015, the state court issued its final judgment in favor of Gurley and Wright. The state court issued its Second Amended Findings of Fact and Conclusion of Law, which sets forth the basis for the judgment, on June 4, 2016. The state court not only found that the purported lien in favor of Barbara Marshall, LP on the 94 acres in Melissa, Texas, was part of a fraudulent transaction, but that Cardwell and

McKinnon had committed a fraud upon this Court in order to obtain an order authorizing the transfer of the 94 acres to North Ponderosa. The state court's decision is on appeal.[1]

18. Gurley and Wright filed another motion to reopen Cardwell's bankruptcy case for the purpose of setting aside the order granting the chapter 7 trustee's motion to sell the 94 acres in Melissa, Texas, to North Ponderosa. This Court granted the motion to reopen after a contested hearing. In addition, after a contested hearing, this Court found that some of the state court's findings and conclusions in the fraudulent transfer decision have preclusive effect. However, this Court reserved for itself the ultimate question of whether Cardwell and McKinnon perpetrated a fraud upon this Court.

19. As relevant to the issue of whether there was a fraud on this Court, the state court's findings establish the following facts:

- The $600,000 loan from Barbara Marshall, LP to Cardwell was not funded.

- On October 22, 2008, the date of the loan documents, the fair market value of the 94 acres securing the indebtedness was $200,000.

- Barbara Marshall was an elderly woman who lacked any knowledge of the purported loan from Barbara Marshall, LP to Cardwell.

- Mrs. Marshall relied upon the advice of her advisor, David McKinnon, in financial matters, including the creation and management of Barbara Marshall, LP as well as the purported loan from Barbara Marshall, LP to Cardwell.

- McKinnon was also Cardwell's financial advisor and friend.

---

[1] The McKinnon Parties argued to this Court that the state court's findings are "bogus." However, under Texas law, a trial court's judgment is final for purposes of res judicata or collateral estoppel even while the case is on appeal. *Gonzalez v. Guilbot*, 315 S.W.3d 533, 536 (Tex. 2010).

- Prior to Cardwell's bankruptcy, McKinnon and Cardwell, together, hatched a scheme to protect Cardwell's non-exempt Melissa property from his creditors, especially Gurley. The first step of this scheme was to create the appearance of negative equity, which would cause a bankruptcy trustee to either abandon the property or sell it cheaply. The second step required Cardwell to file for bankruptcy with the specific intent of obtaining a discharge of his judgment debt to Gurley.

- Prior to Cardwell's bankruptcy, McKinnon prepared fraudulent loan documents to create an appearance of negative equity in the Melissa property. In addition, at some point, McKinnon created North Ponderosa as a shell for the sole purpose of purchasing the property from the bankruptcy trustee for a nominal sum.

- Barbara Marshall, LP and North Ponderosa were McKinnon's alter egos.

- The chapter 7 trustee was unaware of all of the connections between McKinnon, Cardwell, Barbara Marshall, LP and North Ponderosa when he filed a motion seeking to sell the 94 acres to North Ponderosa.

- McKinnon and Cardwell concealed the connections between McKinnon, Cardwell, Barbara Marshall, LP and North Ponderosa from the chapter 7 trustee and this Court.

## CONCLUSIONS

1. The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

2. The Court has the inherent power to vacate judgments that are based on fraud. *In re Bennett*, 2012 WL 2563854, at *4 (Bankr. S.D. Tex. June 28, 2012). *See Thomas v. United States (In re Thomas),* 223 F. App'x 310, 313 (5th Cir. 2007) ("Bankruptcy Courts are courts of equity, and a court of equity is enabled to frustrate fraud and work complete justice.") (citations and internal quotation marks omitted). Federal Rule 60(b) sets forth grounds upon which a party may seek relief from a final judgment. And Federal Rule 60(d)(3) confirms that Rule 60 "does not limit a court's power to ... set aside a judgment for fraud on the court."

2. In their motions and responses, the parties generally agree on the standard applicable to establish a fraud on the Court. They disagree about whether the standard is met in this particular case.

3. Under existing case law in this circuit, fraud on the court is a narrow concept embracing frauds which defile the court itself or are perpetrated by officers of the court so that the judiciary cannot perform its job of adjudging cases impartially. *See, e.g., Wilson v. Johns–Manville Sales Corp..,* 873 F.2d 869 (5th Cir. 1989). "To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *First Nat'l Bank of Louisville v. Lustig,* 96 F.3d 1554, 1573 (5th Cir. 1996) (internal quotation marks omitted)). "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978) (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238 (1944)). "Less egregious misconduct, such as nondisclosure to the court of facts allegedly

pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court."

*Id.*

4. The Fifth Circuit in *Browning v. Navarro*, 826 F.2d 335, 346 (5th Cir. 1987) defined "fraud upon the court" as follows:

> The most commonly used definition is that found in Moore's *Federal Practice:* 'Fraud upon the court should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'

*Id*. (citing 7 Moore, *Federal Practice* ¶ 60.33 at 515 (1971)).

5. Where the wrong is only between the parties and there has been no direct assault on the integrity of the judicial process itself, federal courts have refused to invoke the doctrine of fraud on the court. *See* 11 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2870 at 578 (West 2012). Stated another way, fraud on the court requires a 'scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving 'far more than injury to a single litigant.' *Addington v. Farmer's Elevator Mutual Insurance*, 650 F.2d 663, 668 (5th Cir. 1981) (quoting *Hazel-Atlas Glass Co.,* 322 U.S. at 245-46).

6. Here, the state court's findings establish that Cardwell filed false bankruptcy schedules. He deliberately and affirmatively misrepresented his liabilities with respect to the 94 acres in Melissa, Texas, to this Court and his creditors by pretending that a valid lien existed on the property in favor of Barbara Marshall, LP. In addition, Cardwell's co-conspirator, McKinnon, caused Barbara Marshall, LP to file a false claim that appeared consistent with Cardwell's false representation that the property was encumbered by a lien securing $600,000 in debt.

7. Cardwell signed his bankruptcy schedules and statements under oath.

8. Schedules and statements must be filed under oath in bankruptcy because they are critical to the administration of a case. As one bankruptcy court explained, 'It is a "fundamental necessity in bankruptcy" that the information which debtors provide in their petition, schedules and statement of financial affairs be accurate, thorough, and reliable. In this respect, debtor has an uncompromising duty to disclose whatever ownership interest he holds in property. The importance of these pronouncements cannot be understated; the bankruptcy system as a whole and each particular case which forms a component part of it, cannot function without the honest and forthcoming efforts of its debtors. *In re McLaren,* 236 B.R. 882, 894 (Bankr. D. N.D. 1999) (quoted and cited sources omitted).

9. And as another court stated:

> **We cannot emphasize strong enough** that it is important **that debtors complete their schedules accurately.** They are, of course, prepared on a self-declaratory honor system. The debtor's duty of full disclosure is the quid pro quo [the benefits of a bankruptcy] ... [the purpose of these requirements] is to ensure that debtors provide reliable information to those with an interest in the administration of debtor's estate. Creditors are entitled to truthful statements in a debtor's statement of financial affairs so they may conduct their own investigation of those affairs.

*In re Katz,* 203 B.R. 227, 233 (Bankr. E.D. Pa. 1996) (cited and quoted cases omitted) (emphasis added).

10. In bankruptcy court, honesty is so important that bankruptcy fraud is punishable as a crime under 18 U.S.C. § 157. In addition, concealment of assets, false oaths and false claims are punishable as crimes under 18 U.S.C. § 152.

11. Here, Cardwell's schedules and statements were false with respect to his equity interest in the 94 acres in Melissa, Texas. The proof of claim Cardwell and

McKinnon conspired to file for Barbara Marshall, LP also was false. False statements, false claims, and the concealment of assets implicate bankruptcy criminal statutes under 18 U.S.C. § 152. The summary judgment evidence establishes that Cardwell and McKinnon used this Court to further their conspiracy and, thereby, perpetrated a fraud upon this Court within the meaning of Federal Rule 60(d)(3).

12. The Court is aware that longstanding public policy favors upholding the finality of orders. In this case, however, the fraud perpetrated upon this Court outweighs the general policies favoring the finality of sales orders. Only parties involved in the scheme would be adversely affected by vacating the sale order – no innocent third party relied on this Court's sale order to its detriment. The summary judgment evidence, including the findings of the state court, establish that Cardwell and McKinnon induced the chapter 7 trustee to transfer the title to the Melissa property to a shell company, North Ponderosa, as part of their scheme to hide Cardwell's assets from this Court and from Cardwell's creditors.

13. Cardwell and McKinnon did not simply fail to disclose pertinent facts relating to the sale of the property. The summary judgment evidence establishes that Cardwell and McKinnon concealed assets, falsified a claim, and falsified bankruptcy schedules, thereby using this Court to further their fraudulent scheme.

## CONCLUSION

For all of these reasons, the Court concludes that grounds exist to grant summary judgment in favor of Gurley and Wright and to vacate the April 12, 2011 order authorizing the sale of the Melissa property to North Ponderosa. The Court will enter a separate order consistent with this memorandum opinion.

Signed on 5/25/2017

_Brenda T. Rhoades_   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE